

Jed Ferdinand
*Partner and Co-Chair, IP Group*
jed@msf-law.com
Direct Dial: (212) 655-3564

January 17, 2025

**VIA ECF**

Honorable George B. Daniels
U.S. District Court Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *Gaffney v. Muhammad Ali Enterprises, LLC, et al.* JMOL Motions
             *Civil Action Nos. 1:18-cv-08770-GBD-OTW; 1:20-cv-07113-GBD-OTW*

Dear Judge Daniels:

      We represent Defendants Muhammad Ali Enterprises LLC and Authentic Brands Group LLC (the "MAE Entities"). Pursuant to the Court's request during the hearing on December 18, 2024, we respectfully submit this letter in further support of the MAE Entities' motions for judgement as a matter of law ("JMOL") on: (i) the issue of willfulness and consequent award of statutory damages (ECF 314); and (ii) the amount of the award of Defendants' profits (ECF 317). At oral argument, the Court asked counsel to direct it to certain portions of the trial record necessary to decide these motions. In addition, counsel for Gaffney repeatedly misstated the legal standards to be applied to these motions. As explained below, under the proper legal standards, the trial record amply supports the MAE Entities' motions, and these motions should therefore each be granted.

      **I.**  **Defendants' JMOL Motion on Willfulness and Statutory Damages**

      The MAE Entities moved for JMOL that infringement of the eleven[1] photographs eligible for statutory damages was not willful, and that the award of statutory damages should therefore be reduced from $1,6500,000 ($150,000 per photograph) to $330,000 ($30,000 per photograph), the maximum amount the jury could have awarded absent a finding of willfulness. *See* 17 U.S.C. § 504(c). Under applicable precedent and the trial record in this case, the motion should be granted.

---

[1] The Court instructed the jury that eleven photographs were eligible for statutory damages: Ali-001, Ali-002, Ali-004, Ali-005, Ali-006, Ali-007, Ali-010, Ali-012, Ali-015, Ali-016, Ali-017. For the reasons stated in the briefs, the MAE Entities maintain their motion to exclude Ali-012 from eligibility for statutory damages. *See* ECF 315, pp. 19-21. (Unless otherwise noted, all pagination refers to the blue ECF pagination at the top of the page).

A. There is No Specially Heightened Legal Standard Applicable to JMOL Motions Regarding Willfulness.

At oral argument, Gaffney's counsel asserted that a jury's finding of willfulness is reviewable only for "clear error," erroneously suggesting that there is a specially heightened JMOL standard applicable to jury findings of willfulness.[2] *See* Dec. 18, 2024 Tr. 95:13-14 (attached hereto as **Exhibit A**). In claiming this "clear error standard," Gaffney's counsel misreads *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001). Although *Yurman* noted in a *"cf."* citation that appellate courts review trial court determinations of willfulness for clear error, it held that jury determinations of willfulness should be reviewed under the same Fed. R. Civ. P. 50 standard applied to a jury determination of liability. *Yurman*, 262 F.3d at 112.

Under Rule 50, a court may grant JMOL with respect to an issue where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). This standard is no different than the standard applicable to motions for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986)).

Further, in arguing that "we have found no case where a judge has overridden a jury's determination of statutory damages based upon an award within the min/max range," (Dec.18, 2024 Tr. 104:2-4), Gaffney's counsel elides the critical question of which "min/max" range is applicable under the evidence. Indeed, without evidentiary support for the jury's finding of willfulness, the only appropriate minimum and maximum statutory damages range is $750 to $30,000 per infringing work. 17 U.S.C. 504(c)(1). The MAE Entities are not challenging the jury's exercise of discretion in awarding statutory damages within this range. Rather, they are challenging as a matter of law the applicability of a damages range above $30,000 per work without a proper evidentiary basis. *Compare Yurman*, 262 F.3d at 114 ("*Given the jury's sustainable finding of willfulness*," court declines to disturb jury award within statutory range) (emphasis added). In contrast to *Yurman*, as the record discussed below demonstrates, the jury's finding of willfulness here is not sustainable. The jury's award of statutory damages should therefore be reduced to $330,000, the maximum amount permissible under the properly applicable statutory damages range.

B. The Trial Record Does Not Support the Jury's Finding of Willfulness.

At oral argument, the Court asked counsel to direct it to portions of the trial record that establish whether and to what extent any of the infringing uses of the photographs were uses by licensees that did not have preexisting licenses with the MAE Entities prior to the January 31, 2015 expiration of the license between Gaffney and the MAE Entities (the "Gaffney License Agreement"). Dec. 18, 2024 Tr. 7:10-21; 10:12-21.

---

[2] Gaffney's counsel also erred in stating that "[t]here has been no case where a judge has reversed a jury's finding of willfulness because the standard is so high." Dec. 18, 2024 Tr. 63:21-23. *See Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1013, 1021 (7th Cir. 1991) (affirming district's court's grant of defense motion for judgment notwithstanding the verdict on issue of willfulness) (overruled in unrelated part by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

As shown below, of the eleven photographs eligible for statutory damages,[3] only four of them (Ali-010, Ali-015, Ali-016, and Ali-017) were used by a total of three new licensees who did not have a license in effect at the time of the expiration of the Gaffney License Agreement. The three licensees are iCanvas, Tricot Mondial and Roots of Fight a/k/a Copasetic Clothing. Yet, importantly, there is no evidence that the MAE Entities acted willfully with respect to any post-expiration usage of the four photographs by these three licensees.

*iCanvas*. The evidence at trial showed that new licensee iCanvas used Ali-010 and Ali-016 after expiration of the Gaffney License Agreement. *See* ECF 316-7, p.2 (Plaintiff Trial Ex. 86-1); ECF 316-8, p. 2 (Plaintiff Trial Ex. 89-1). The evidence also showed, however, that when the MAE Entities were notified of iCanvas's post-termination use of Gaffney's photographs, they tried to stop it. *See* ECF 316-11, p. 2 (Plaintiff's Trial Ex. 102-1) (Feb. 7, 2017 email from Simon Chin of ABG to Katie Hanchett at iCanvas, instructing iCanvas to discontinue use of Gaffney photographs and advising that "[n]otice should have been received by iCanvas a long time ago to discontinue them."). This is clear evidence confirming that when the MAE Entities had knowledge, they acted with diligence and in good faith, and directly contravenes a finding of willfulness.

*Tricot Mondial*. The evidence at trial showed a single download of Ali-015 by Erin Yas of Tricot Mondial on March 3, 2015. *See* ECF 316-5, p. 5 (Plaintiff Trial Ex. 95-7). However, there is no evidence that the Muhammad Ali Entities were aware of this download, and therefore no basis to conclude that they acted willfully with respect to this usage.

*Roots of Fight*. The evidence at trial showed that Roots of Fight reposted with tags two official Muhammad Ali social media posts of Ali-015 and Ali-017. ECF 319-10 (Plaintiff's Trial Ex. 9). There is no evidence, however, that any employee or agent of the MAE Entities was aware of these reposts or tags. Moreover, because the MAE Entities' own post-termination social media uses were not willful under the ambiguous Section 10.2 of the Gaffney License Agreement (*see* ECF 315, pp. 14-16; ECF 316-3, p.7), the MAE Entities could not have acted willfully with respect to Roots of Fight's reposting of those social media posts.

The remainder of the uses of the eleven photographs were either social media uses by the MAE Entities,[4] or uses by licensees who had preexisting licenses with the MAE Entities that remained in effect after expiration the License Agreement.[5] Given the ambiguity of the Gaffney

---

[3] The jury only found willfulness with respect to the eleven photographs eligible for statutory damages. ECF 313, p.2 (Jury Verdict Form). Therefore, any putative evidence of willfulness cited by Gaffney with respect to uses of other photographs cannot support the jury's willfulness finding with respect to the eleven eligible photographs. For example, the MAE Entities' distribution of Ali-008 to Tag Heuer is not relevant here, because the jury was not asked to consider whether this photograph was infringed willfully. There is no evidence of any infringing use of a statutory-damages eligible photograph by licensees Tag Heuer, Bombas, Malloy Distribution, Uncommon or American Classics. All of these licensees and their related licenses are therefore irrelevant here.

[4] Gaffney presented evidence of the MAE Entities' post-termination social-media use for five statutory damages eligible photographs, Ali-002, Ali-006, Ali-012, Ali-015 and Ali-017. *See* ECF 316-4 (Plaintiff's Trial Ex. 4 at pp. 4-1, 4-4, 4-57, 4-17 and 4-20). He also introduced evidence of a single post-termination download of Ali-007 by MAE's social media manager Kerri Wright Lewis. ECF 316-5, p. 3 (Plaintiff's Trial Ex. 95 at p. 95-3).

[5] See ECF 316-5, 316-6 and 316-9 for evidence of non-social media uses of statutory damages eligible photographs by preexisting licensees Open Road, Tailgate Clothing, GB Eye, and Pyramid. For evidence of these licensees' preexisting licenses, see Defendants' Trial Ex. 10 (December 14, 2011 Open Road Agreement, attached hereto as **Exhibit B**);

License Agreement, none of these uses are sufficient to sustain a finding of willfulness. *See* ECF 316-3, p.7 (Gaffney License Agreement § 10.2); ECF 154, p. 15 n. 18. (Summary Judgment Order).

Furthermore, Gaffney's contentions that these sublicenses did not effectively license Gaffney photographs, and that Gaffney did not give approval for the licensees' uses, cannot support the jury's finding of willfulness. Gaffney has not alleged that any pre-termination uses of the photographs pursuant to these sublicenses, or pre-termination uses of the photographs without approval, constituted copyright infringement, and he accepted revenue for these uses without objection based on reports provided to him by the MAE Entities. Dec. 18, 2024 Tr. 72:2-73:16. There is therefore no reasonable basis for a jury to conclude that the lack of approval and/or scope of the underlying sublicenses is evidence of post-termination willful conduct. *See* ECF 334-7, pp. 42-56 (Plaintiff Trial Ex. 39) (Royalty Statement showing Gaffney's knowing receipt of revenue from licensees whose products he had never approved).

### C. The Muhammad Ali Entities Did Not Waive Their Objection to the Court's Statutory Damages Instruction, and Failure to Include the *Bryant* Factors Was Not Harmless Error.

In addition to their JMOL regarding willfulness, the MAE Entities moved in the alternative for a new trial on statutory damages or remittitur, on the ground that the jury was not properly instructed on the relevant factors to consider in awarding statutory damages under *Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010).[6]

Gaffney's counsel erroneously contended for the first time at oral argument that the MAE Entities did not object to the absence of an instruction on the *Bryant* factors. In fact, the MAE Entities squarely raised this objection in their September 21, 2024 written "Defendants' Objections to the Jury Charge and Proposed Verdict Form," a document that Gaffney's counsel conveniently ignored at oral argument. ECF 305, p. 2 (Objection 4). The MAE Entities' counsel again stated on the record at the charging conference that "it is appropriate to include all of the guiding factors" in the court's statutory damages instruction. Trial Tr. 969:20-21 (attached hereto as **Exhibit D**). While the MAE Entities *also* objected to the inclusion of a stand-alone instruction on the compensatory and punitive purposes of statutory damages, and thanked the Court when it declined to include such an instruction, counsel never withdrew the MAE Entities' objection to the omission of the *Bryant* factors. *See* Trial Tr. 968:17-20; 969:14-970:1, 971:11. The Court subsequently acknowledged and denied their written objection to the omission of the *Bryant* factors. Trial Tr. 973:12-974:3.

---

Defendants' Trial Ex. 11 (September 26, 2011 Tailgate Clothing License, as amended June 5, 2013, attached hereto as **Exhibit C)**;  ECF 334-7, pp.57-62 and ECF 334-8, pp. 1-22  (June 1, 2014 GB Eye, Ltd. License); ECF 334-10, pp. 2- 28 and ECF 334-11, pp. 1-2  (January 1, 2015 Pyramid America License). Although there is evidence that Pyramid's use of the photographs generated revenue after expiration of the initial term of its 2015 license agreement, there is no evidence that such revenue was related to new uses of the photographs, as opposed to sell-offs of old product. *See* ECF 334-15, p. 4 (Feb. 2, 2022 email from German Roman to Katie Jones advising that "Pyramid has a habit across all our brands to continue to sell old items."). Moreover, the evidence showed that the Muhammad Ali Entities tried to stop Pyramid's conduct. *Id.* ("I've told [Pyramid] time and time again to stop doing this.").

[6] A jury instruction may be erroneous not only where it contains an incorrect statement of the law, but also where it is incomplete. *See Boyce v. Soundview Tech. Grp., Inc.,* 464 F.3d 376, 390 (2d Cir. 2006) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard *or* does not adequately inform the jury on the law.")(emphasis added).

Moreover, the MAE Entities argued in their closing statement that the jury's award of statutory damages "must be related to the money lost, if any, which we submit is none." *See* Trial Tr. 991:19-992:1 (Ex. D). This argument is directly based upon *Bryant* factor three, "the revenue lost by the copyright holder," if any. *Bryant*, 603 F.3d at 144. The MAE Entities were entitled to an instruction from the Court that the law permits consideration of this factor when awarding statutory damages, and the omission was not harmless.

### II. Defendants' JMOL Motion to Reduce the Award of Defendants' Profits

The MAE Entities stand by the arguments made in their briefs on this motion, which demonstrates that there is insufficient evidence to support an award of Defendants' profits beyond the $3,609 in profits they earned from the sale of infringing products after payment of royalties to Gaffney.[7] *See* ECF 318, 339. Gaffney bears the burden of proving a reasonable relationship between revenue and the infringement. *On Davis v. The Gap, Inc.* 246 F. 3d 152, 159-160 (2d Cir. 2001). Contrary to Gaffney's contention, courts in the Second Circuit have repeatedly equated this standard with a causation standard. *Bayoh v. Afropunk,* 2020 WL 6269300, *6 (S.D.N.Y. Oct. 26, 2020); *Graham v. Prince*, 2023 WL 5917712, *5 (S.D.N.Y. Sept. 11, 2023). *See also* ECF 318, p. 6 n. 5 (collecting cases from other circuits). Gaffney failed to prove as a matter of law that any revenue beyond the revenue from these sales was reasonably related, or causally connected, to the infringement.

### III. Conclusion

The MAE Entities respectfully request that the Court grant its JMOL motion on the jury's finding of willfulness and reduce the award of statutory damages to $330,000. If the Court then permits Gaffney to change his election of damages to actual damages and Defendants' profits,[8] the Muhammad Ali Entities respectfully request that the award of Defendants' profits be reduced to $3,609. The Muhammad Ali Entities do not here challenge the jury's award of actual damages in the amout of $362,665. If both motions are granted and Gaffney is permitted to change his election of damages, he would therefore be entitled to a damages award of $366,274 [$362,665 in actual damages plus $3,609 in Defendants' profits]. In the alternative, the MAE Entities move for a new trial limited solely to the issue of statutory damages, or for remitter of the statutory damages award. *See* ECF 315, pp. 16-19.

Respectfully submitted,

/s/*Jed Ferdinand*

Cc: All counsel of record                                     Jed Ferdinand, Esq.

---

[7] The MAE Entities received revenue of $4,649 from the sale of infringing products. ECF 318, p. 6; ECF 319-1, ECF 319-2. They paid Gaffney the 30% royalty owed on $3,466 of this revenue ($1,040) (*see* ECF 319-1), but Gaffney refused to accept the 30% royalty that remains owing on the remaining $1,183 in revenue ($355). The total amount of profits retained by the MAE Entities is therefore $3,609 (total revenue of $4,649 minus royalty paid of $1,040).

[8] The MAE Entities agreed at oral argument that because the jury did not identify what portion of the actual damages award relates to the eleven statutory damages photographs, if the Court reduces the award of statutory damages to $330,000, Gaffney may change his election of statutory damages to an election of actual damages of $362,655 and Defendants' profits. Dec. 18, 2024 Tr. 36:15-37:4.